Anne M. Voigts (SBN 220783)
*avoigts@kslaw.com*
George R. Morris (SNB 249930)
*gmorris@kslaw.com*
KING & SPALDING LLP
601 South California Avenue, Ste. 100
Palo Alto, CA 94304
Telephone: (650) 422-6700
Fax: (650) 422-6800

Elisa Della-Piana (SBN 226462)
*edellapiana@lccr.com*
Jude Pond (SBN 299229)
*jpond@lccr.com*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
Fax: (415) 543-0296

Shilpi Agarwal (SBN 270749)
*sagarwal@aclunc.org*
Christine P. Sun (SBN 218701)
*csun@aclunc.org*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Fax: (415) 255-8437

Whitney Rubenstein (SBN 300579)
*wrubenstein@ebclc.org*
Meghan Gordon (SBN 278936)
*mgordon@ebclc.org*
EAST BAY COMMUNITY LAW CENTER
2921 Adeline Street
Berkeley, CA 94703
Telephone: (510) 548-4040
Fax: (510) 548-2566

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **DARREN MATHIEU II and EDWARD JACKSON JR.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CITY OF OAKLAND and OAKLAND HOUSING AUTHORITY POLICE DEPARTMENT,**<br><br>**Defendants.** | **Case No. 18-cv-5742 CRB**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUCTION; MEMORANDUM IN SUPPORT THEREOF**<br><br>**Hearing Date: November 9, 2018**<br>**Time: 10:00 a.m.**<br>**Courtroom: 6**<br>**Judge: Honorable Charles R. Breyer** |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..........................................................................................................ii

**NOTICE OF MOTION AND MOTION** ...................................................................................... 1

**RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3))** ...................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................ 2

  I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 2

  II.    FACTUAL BACKGROUND ..................................................................................... 3

    A.    The Loitering Ordinance and its Enforcement ................................................... 3

    B.    Plaintiff Darren Mathieu ...................................................................................... 4

    C.    Plaintiff Edward Jackson ...................................................................................... 5

  III.    LEGAL STANDARD ................................................................................................. 5

  IV.    ARGUMENT ............................................................................................................... 6

    A.    The Plaintiffs are likely to prevail on the merits of their vagueness challenge. ................... 6

      1.    Loitering laws using identical or similar language to the Loitering Ordinance have consistently been struck down as unconstitutionally vague. .............7

      2.    The Loitering Ordinance is unconstitutionally vague because it fails to provide sufficient notice of what conduct is prohibited............................... 11

      3.    The Loitering Ordinance is also unconstitutionally vague because it fails to provide any guidance to law enforcement as to how to enforce it, or alternatively, how to enforce it in a constitutionally permissible manner. .......................... 12

        a.    The Loitering Ordinance invites arbitrary enforcement. ........................... 13

        b.    The Loitering Ordinance invites the police to violate the Fourth Amendment. ......... 14

      4.    As further evidence of its vagueness, OHAPD is, in fact, enforcing the Loitering Ordinance in an arbitrary manner. ..................................................... 15

    B.    An injunction is necessary to prevent irreparable harm..................................... 16

    C.    The balance of hardships tips in Plaintiffs' favor. ............................................. 17

    D.    The public interest favors the requested relief. ................................................. 17

  V.    CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

*Buquer v. City of Indianapolis*,
    797 F. Supp. 2d 905 (S.D. Ind. 2011) .............................................................17

*City of Chicago v. Morales*,
    527 U.S. 41 (1999)...............................................................................................9

*City of Salida v. Edelstein*,
    Case No. 97CR62 (Colo. Dist. Ct. 1998)..........................................................10

*Commonwealth v. Asamoah*,
    809 A.2d 943 (Pa. Super. Ct. 2002) ..................................................................10

*Diggs v. Hous. Auth.*,
    67 F. Supp. 2d 522 (D. Md. 1999) .....................................................................17

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011) ...............................................................................6

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972).....................................................................................6, 7, 16

*Johnson v. Athens-Clarke Cty.*,
    529 S.E.2d 613 (Ga. 2000)..................................................................................10

*Johnson v. United States*,
    135 S. Ct. 2551 (2015).........................................................................................6

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 1997) ..............................................................................18

*Kolender v. Lawson*,
    461 U.S. 352 (1983)..................................................................................... *passim*

*Leal v. Town of Cicero*,
    2000 WL 343232 (N.D. Ill. 2000) ......................................................................10

*Mid-Fla Coin Exch., Inc. v. Griffin*,
    529 F. Supp. 1006 (M.D. Fla. 1981) ..................................................................16

*Monterey Mech. Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) ..............................................................................16

*NAACP Anne Arundel Cty. Branch v. City of Annapolis*,
    133 F. Supp. 2d 795 (D. Md. 2001) ...................................................................10

*U.S. ex rel. Newsome v. Malcolm*,
    492 F.2d 1166 (2d Cir. 1974)...................................................................... *passim*

*Nunez by Nunez v. City of San Diego*,
  114 F.3d 935 (9th Cir. 1997) ................................................................6, 9, 11

*O'Brien v. Town of Caledonia*,
  748 F.2d 403 (7th Cir. 1984) ................................................................17

*Papachristou v. City of Jacksonville*,
  405 U.S. 156 (1972) ..................................................................... *passim*

*People v. Bright*,
  520 N.E.2d 1355 (N.Y. 1988) ...............................................................10

*Rodriguez v. City of Los Angeles*,
  2013 WL 12129651 (C.D. Cal. 2013) ......................................................17

*Sammartano v. First Judicial Dist. Court*,
  303 F.3d 959 (9th Cir. 2002) ................................................................17

*Scherr v. Volpe*,
  466 F.2d 1027 (7th Cir. 1972) ..............................................................18

*State v. Burnett*,
  755 N.E.2d 857 (Ohio 2001) .................................................................10

*State v. Castaneda*,
  245 P.3d 550 (Nev. 2010) ....................................................................10

*State v. Richard*,
  836 P.2d 622 (Nev. 1992) .................................................................10, 11

*Temple Univ. v. White*,
  941 F.2d 201 (3d Cir. 1991) .................................................................18

*Terry v. Ohio*,
  392 U.S. 1 (1968) ............................................................................15

*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ...........................................................12, 16

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ...........................................................................6

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ..........................................................................6, 17

**Statutes**

Cal. Penal Code § 19.8.....................................................................3, 6

Cal. Penal Code § 602......................................................................12

Oakland Municipal Code § 9.08.250 ........................................................................... *passim*

**Other Authorities**

Civil Local Rules, 7-2(B)(3) ................................................................................................1

Federal Rules of Civil Procedure, 65(a) ...........................................................................1

U.S. Const. amend. IV ................................................................................................ *passim*

U.S. Const. amend. XIV ............................................................................................. *passim*

1

## **NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that at 10:00 a.m. on Friday, November 9, 2018, in Courtroom 6

3   of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102,

4   Plaintiffs, by and through their undersigned counsel, will and hereby do move this Court pursuant to

5   Fed. R. Civ. P. 65(a) for issuance of an Order granting a preliminary injunction prohibiting and

6   enjoining the Defendants, their officials, officers, agents, employees, contractors, and any other

7   persons acting for them, with them, through or on their behalf, who have received actual notice of

8   that Order, from enforcing Oakland Municipal Code Section 9.08.250 ("the Loitering Ordinance").

9      Plaintiffs move on the grounds that the Loitering Ordinance is unduly vague and therefore

10   violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

11      This motion is supported by the attached Memorandum of Points and Authorities; the

12   Declarations of Darren Mathieu II and Edward Jackson Jr.; and the [Proposed] Order, all filed

13   contemporaneously herewith; on the pleadings and papers on file in this action or which may be

14   submitted prior to or at the time of the hearing; and on such argument as may be adduced at the

15   hearing hereof.

16

## **RELIEF REQUESTED (CIVIL L.R. 7-2(B)(3))**

17      Plaintiffs request that this court issue an injunction enjoining Defendants from enforcing

18   Oakland Municipal Code Section 9.08.250, an anti-loitering ordinance that applies on the property

19   owned by Oakland Housing Authority.

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

3

Plaintiffs bring this suit to invalidate as unconstitutionally vague an Oakland municipal

4
ordinance that makes it a crime to "loiter," "prowl," or "wander" without "lawful business" or

5
"purpose" on public housing property.  *See* Oakland Municipal Code § 9.08.250 ("the Loitering

6
Ordinance" or the "Ordinance").  The Ordinance was passed by the City of Oakland and is enforced

7
by the Oakland Housing Authority Police Department ("OHAPD").  Its unconstitutionally vague

8
language enables OHAPD routinely to stop Oakland public housing residents and their guests who

9
are engaged in entirely innocent conduct, to subject them to questioning and searches, and to then

10
accuse them of committing infractions or other minor offenses.  Even when no formal loitering

11
citation is issued, OHAPD often records these interactions in the form of "Incident Reports," which

12
can then go into a resident's file and be used as grounds to support eviction from public housing.

13
Plaintiff Darren Mathieu is an Oakland public housing resident who has been reported for "loitering"

14
dozens of times.  He has never received a loitering citation.  But OHAPD's enforcement of the

15
Loitering Ordinance has directly harmed him and continues to threaten his and his family's ability to

16
remain in public housing.  Plaintiff Edward Jackson received a citation under the Loitering

17
Ordinance in 2016.  He currently owes $785 for this purported loitering violation.

18

Plaintiffs now seek a preliminary injunction against the continued enforcement of the

19
Loitering Ordinance on the grounds that it is facially vague and violative of due process.  Under

20
*Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972), the Ordinance is unconstitutional (1)

21
because it relies on language that—as the United States Supreme Court and several other courts have

22
squarely held—fails to provide notice of what conduct is prohibited; and (2) because it invites

23
"arbitrary and discriminatory enforcement" by failing to provide sufficient guidelines to law

24
enforcement as to how it should be enforced.  Moreover, under *U.S. ex rel. Newsome v. Malcolm*,

25
492 F.2d 1166 (2d Cir. 1974), the Ordinance is vague because it enables police to engage in

26
suspicionless seizures in violation of the Fourth Amendment.  Indeed, courts have repeatedly struck

27
down other loitering ordinances that rely on similar or identical language to that used in this

28
Loitering Ordinance.  For these reasons, and as further explained below, the Plaintiffs are very likely

1   to succeed on the merits of their claim.  Unless the enforcement of the Loitering Ordinance is

2   enjoined, the Plaintiffs will suffer irreparable injury because their constitutional rights will continue

3   to be violated.

4   **II.     FACTUAL BACKGROUND**

5        **A.  The Loitering Ordinance and its Enforcement**

6   Oakland Municipal Code § 9.08.250 ("the Loitering Ordinance") reads as follows:

7   Every person who loiters, prowls, wanders or is present without lawful business on the
    property of the Housing Authority of the city and who fails to leave upon request of a
8   peace officer or authorized agent of the Housing Authority of the city or returns within
    seventy-two (72) hours after being asked to leave by a peace officer or authorized agent
9   of the Housing Authority of the city, is guilty of an infraction. As used in this section
    "loiter" means to delay, to linger, or to idle about any such Housing Authority of the city
10  property without a lawful purpose for being present.

11  Violations of the Loitering Ordinance constitute a criminal infraction punishable by a fine of up to $250.

12  *See* Cal. Penal Code § 19.8.  When combined with civil penalties, however, a person cited under the

13  Loitering Ordinance can owe as much as $785.  Complaint, Doc. No 1, ("Compl.") ¶ 19.

14       Unsurprisingly, due to its vague language and broad prohibitions, the Loitering Ordinance has led

15  to arbitrary and discriminatory policing.  The Loitering Ordinance is enforced by Oakland Housing

16  Authority Police Department, a supplemental policing entity that operates on Oakland Housing Authority

17  ("OHA") property.  *See* Compl. ¶ 23.  As detailed in the Complaint, OHAPD uses its broad authority and

18  unfettered discretion under the Loitering Ordinance to routinely stop, question, and harass Oakland

19  public housing residents and their guests.  *Id*. ¶¶ 25-39.  The Loitering Ordinance has been used by

20  OHAPD as the basis to break up a family barbecue, to disperse groups of friends—including residents—

21  spending time in the outdoor areas near a resident's home, and to arbitrarily order residents' guests to

22  leave.  *Id*. ¶ 28.  Moreover, OHAPD has at times used the Loitering Ordinance as a basis to follow

23  individuals who are leaving OHA property into neighboring shops in order to stop, question, and even

24  arrest them at locations unaffiliated with the Oakland Housing Authority.  *Id*. ¶ 34.

25       These contacts often do not result in the issuance of an official citation.  Compl. ¶ 26.  OHAPD

26  does, however, record these interactions in the form of "Incident Reports," wherein OHAPD officers

27  purport to describe their interactions with, or observations of, residents, guests, or other individuals on

28  OHA property.  *Id*.  OHAPD frequently forwards these reports to OHA as potential "lease violations,"

1  which are then included in a resident's tenant file.  *Id*.  Because of this, these reports and accusations of

2  "loitering" can later be used as a basis for eviction from public housing.

3      Prior to this lawsuit, undersigned counsel sent a letter to OHAPD detailing concerns regarding

4  the text and enforcement of the Loitering Ordinance.  Compl. ¶ 69.  In response, OHAPD took the

5  position that "OHAPD staff uses the [Loitering Ordinance] to prevent trespassing on OHAPD property."

6  *Id*. ¶ 72.  In connection with this response, OHAPD also issued Special Order 18-4 to all employees,

7  which purports to provide guidance as to how the Ordinance should be enforced.  *Id*.  This guidance

8  advises that the Ordinance should be enforced only on the property owned by the OHA.  It further

9  instructs that, to enforce the Ordinance, OHAPD should "contact" an individual and, if that person is not

10  an "authorized resident" or a "resident's guest," the officer should "seek to determine" why that person is

11  on the property.  *Id*.  Notably, the issued guidance does not identify any conduct or suspicious activity

12  that must occur in order for the OHAPD to make contact with a particular individual.  It therefore

13  authorizes OHAPD to stop and question anyone on OHAPD property—including residents—at any time.

14      **B.  Plaintiff Darren Mathieu**

15      Plaintiff Darren Mathieu is a longtime resident of Lockwood Gardens ("Lockwood"),

16  an apartment complex owned and operated by OHA.  Declaration of Darren Mathieu in Support of

17  Plaintiffs' Motion for Preliminary Injunction ("Mathieu Decl."), ¶ 2-3.  OHAPD has generated

18  approximately 63 Incident Reports that name or involve Mathieu from 2011 through early 2017.  Compl.

19  ¶ 41.  Of these, "loitering" is named approximately 40 percent of the time as the purported basis for

20  reporting Mathieu.  *Id*. ¶ 43.  These reports do not, however, identify any criminal or suspicious activity

21  in which Mathieu was supposedly engaged.  Instead, the reports claim to be for "intelligence purposes",

22  *id*. ¶ 42, fault him for "loitering" in his own home, *id*. ¶ 44, or fault him for the alleged "loitering" of

23  other people, *id*. ¶ 46.  In fact, OHAPD repeatedly generates Incident Reports faulting Mathieu for his

24  refusal to help OHAPD disperse other people who OHAPD believes are "loitering."  *Id*.

25      Mathieu has never received an official citation under the Loitering Ordinance.  *Id*. ¶ 45; Mathieu

26  Decl. ¶ 11.  OHAPD has, however, forwarded several of the Incident Reports that reference or describe

27  him as "loitering," to OHA as purported "lease violations."  *See* Compl. ¶¶ 46, 48.  In 2014, OHA

28  brought an unlawful detainer action against Mathieu and his mother pursuant to its attempt to evict them

1  from subsidized housing.  Compl. ¶ 52.  In those proceedings, OHA relied upon OHAPD Incident

2  Reports against Mathieu, including those naming "loitering" as the basis for the report, as part of their

3  case for eviction.  *Id.*  Mathieu and his mother ultimately were able to maintain their housing.  *Id.*

4  Mathieu suffers from constant stress due to OHAPD's relentless contacts under the guise of

5  "loitering" enforcement.  Compl. ¶ 53; Mathieu Decl. ¶ 16.  Based upon his experience, Mathieu believes

6  that OHAPD may contact him and generate an Incident Report alleging a lease violation any time he is

7  standing in the outdoor areas of Lockwood.  Mathieu Decl. ¶ 18.  He worries about reports of "loitering"

8  being used to evict his mother from her home of more than two decades.  *Id.* ¶ 17.  As a result, he tries to

9  stay in his housing unit, goes out to the common areas of Lockwood only when necessary, and feels like

10  he is being jailed in his own home.  *Id.* ¶ 15.

11  **C.  Plaintiff Edward Jackson**

12  Edward Jackson lived in Lockwood as a child.  Compl. ¶ 14; Declaration of Edward Jackson Jr.

13  In Support of Plaintiffs' Motion for Preliminary Injunction ("Jackson Decl."), ¶ 2.  He now resides

14  approximately 10 miles away in Hayward, California, but he frequently visits friends and family at

15  Lockwood.  Jackson Decl. ¶ 2-3.  Jackson has had numerous encounters with OHAPD during his visits to

16  Lockwood.  *Id.* ¶ 4.

17  Jackson currently has an outstanding citation under the Loitering Ordinance, issued on September

18  25, 2016.  Compl. ¶ 14.  According to Alameda County Superior Court records, he currently owes $785

19  for this purported loitering violation.  *Id.*  OHAPD issued this citation against Jackson when he and a

20  group of friends (at least one of whom was a resident of Lockwood) were gathered in a public area of

21  Lockwood getting some air on a break from watching an Oakland Raiders' game in one of the resident's

22  apartments.  *See* Compl. ¶¶ 56-59; Jackson Decl. ¶¶ 8-10.  No one was engaged in criminal activity of

23  any kind.  *Id.*

24  Because of OHAPD's harassment, Jackson tries to avoid coming to Lockwood, although he has

25  several friends and family members who reside there with whom he would otherwise spend time.

26  Jackson Decl. ¶ 11.

27  **III.  LEGAL STANDARD**

28  A preliminary injunction is appropriate when the plaintiff establishes that "he is likely to

1   succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

2   that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

3   *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  This is commonly referred to as the "four-

4   factor test."  *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011).

5   Here, Plaintiffs are entitled to preliminary injunctive relief because they easily meet all four

6   elements of this test.

7   **IV.    ARGUMENT**

8       **A. The Plaintiffs are likely to prevail on the merits of their vagueness challenge.**

9           The Plaintiffs have an overwhelming likelihood of success on the merits of the issue before

10  this Court: whether the Loitering Ordinance is void for vagueness under the Due Process Clause of

11  the Fourteenth Amendment of the United States Constitution.

12          The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty,

13  or property, without due process of law."  U.S. Const. amend. XIV.  "It is a basic principle of due

14  process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned*

15  *v. City of Rockford,* 408 U.S. 104, 108 (1972). The prohibition of vagueness in criminal statutes "is a

16  well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules

17  of law. " *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (internal citations omitted).

18  Notably, "[t]he need for definiteness [in a statute] is greater when the ordinance imposes criminal

19  penalties on individual behavior or implicates constitutionally protected rights than when it regulates

20  the economic behavior of businesses."  *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th

21  Cir. 1997); *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489,

22  498-99 (1982).  Here, the Loitering Ordinance requires even more definiteness because it defines an

23  "infraction," which is criminal in nature. *See* Cal. Penal Code § 19.8.

24          A statute can be void for vagueness in either of two ways: (1) it can fail to provide sufficient

25  notice about the prohibited conduct to a person of ordinary intelligence, or (2) it can encourage

26  "arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983);

27  *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).  Of these, "the more important

28  aspect of vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to

govern law enforcement." *Kolender*, 461 U.S. at 358 (internal quotation marks and citation omitted).  Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."  *Id*. (citation omitted).  Although a statute does not have to be mathematically precise to withstand a vagueness challenge, "it [must be] clear what the ordinance as a whole prohibits."  *Grayned v. City of Rockford,* 408 U.S. 104, 110 (1972).

Here, the Loitering Ordinance is void because it is vague under both tests.  *First*, the Loitering Ordinance fails to provide sufficient notice of what conduct is prohibited.  It presents and relies upon several undefined terms—including "wandering," "prowling," most notably "without lawful purpose" and "without lawful business,"—that are entirely subjective.  *Second*, as is plainly evident by how OHAPD does in fact enforce the Ordinance, it invites and encourages arbitrary and discriminatory enforcement. The text of the Loitering Ordinance provides law enforcement with no guidance whatsoever as to what indicia might be used to determine when a violation has occurred. Similarly, the Loitering Ordinance is invalid because it also fails to provide standards that would allow OHAPD to enforce it in a manner that is consistent with the Fourth Amendment.  *See U.S. ex rel. Newsome v. Malcolm*, 492 F.2d 1166 (2d Cir. 1974).

### 1. Loitering laws using identical or similar language to the Loitering Ordinance have consistently been struck down as unconstitutionally vague.

Courts around the country have consistently held loitering ordinances and statutes unconstitutionally vague under the Fourteenth Amendment.  Indeed, the United States Supreme Court has repeatedly struck down loitering laws as violative of due process, including one that presented language nearly identical to what is at issue here.

In *Papachristou v. City of Jacksonville*, 405 U.S. 156, 163-71 n.1 (1972), the Supreme Court invalidated as unconstitutionally vague a Florida vagrancy ordinance that read:

> Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons *wandering* or strolling around from place to place *without any lawful purpose or object*, habitual loafers, disorderly persons, *persons neglecting all*

*lawful business* and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses. (emphasis added).

The Court held the ordinance invalid under both alternatives of the vagueness analysis. As to the notice requirement, the Court found that the lists of criminal behaviors, including "wandering," were too "all-inclusive and generalized" and risked capturing purely innocent behavior. *Id*. at 166. The Court specifically found that the phrase "without any lawful purpose or object" could serve as a "trap for innocent acts." *Id*. at 164. It likewise found that the phrase "neglecting all lawful business" would "literally embrace many members of golf clubs and city clubs." *Id*. The Court concluded that the statute ultimately failed to provide "ascertainable standards of guilt." *Id*. at 165 (citation omitted). As to the enforcement prong, the Court similarly held that the ordinance failed because it afforded too much discretion to the Jacksonville Police: "[w]here, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law." *Id.* at 170; *see also id.* (noting that the ordinance "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'"(citation omitted)).[1] *Papachristou*, therefore, considered language virtually identical to that used in the Loitering Ordinance and struck it down as "plainly unconstitutional." *Id.* at 171.

Subsequent to *Papachristou*, the Supreme Court has repeatedly struck down other loitering ordinances that infringed upon the due process right to know what a law prohibits. In *Kolender v. Lawson*, 461 U.S. 352, 354 n.1 (1983), the Supreme Court invalidated as unconstitutionally vague a California statute that read:

Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: .... (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.

---

[1] Indeed, the Court's concern mirrors the reality that, historically, loitering statutes have been used to police and control black people. *See* Compl. ¶¶ 20-21.

1    Relying primarily on the "virtually complete discretion" of the policing in enforcing the statute, the

2    Supreme Court held that it was unconstitutionally vague. *Id*. at 352. The Court reasoned that the

3    statute allowed the police to stop any person "whom police may think is suspicious but do not have

4    probable cause to believe has committed a crime," thereby conditioning the right to walk the public

5    streets on "the whim of any police officer." *Id*. at 358. Moreover, the ordinance "necessarily

6    entrust[s] lawmaking to the moment-to-moment judgment of the policeman on his beat." *Id*. at 359

7    (internal citations and quotation marks omitted).

8          In *City of Chicago v. Morales*, 527 U.S. 41, 46 (1999), the Supreme Court struck down as

9    unconstitutionally vague a Chicago ordinance that imposed criminal sanctions for "loitering in any

10    public place" with suspected "criminal street gang members." The statute defined "loiter[ing]" as

11    "remain[ing] in any one place with no apparent purpose." *Id*. at 47. The plurality opinion reasoned

12    that the ordinance provided "inadequate notice" about the forbidden conduct because an ordinary

13    citizen would have a difficult time determining whether or not they lacked "an apparent purpose."

14    *Id*. at 56-57. A majority of the Justices struck down the ordinance under the enforcement

15    requirement, holding that the ordinance was unconstitutional because it failed "to establish minimal

16    guidelines to govern law enforcement." *Id*. at 60. The Court reasoned that, by its terms and as

17    construed by the lower court, the statute provided "absolute discretion to police officers to decide"

18    when a violation had occurred. *Id.* at 61 (citation omitted).[2]

19          These cases lay the foundation upon which state and federal courts have relied to

20    resoundingly invalidate as unconstitutionally vague various loitering, vagrancy, and curfew

21    ordinances, some of which used language similar or identical to what is at issue here. *See, e.g.,*

22    *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 938, 940 (9th Cir. 1997) (invalidating as

23    unconstitutionally vague an ordinance that made it illegal "to loiter, idle, wander, stroll or play in or

24    upon the public streets"); *United States ex rel. Newsome v. Malcolm*, 492 F.2d 1166, 1171, 1174 (2d

25          [2] Notably, in *Morales*, the Court rejected the city's argument that the ordinance was sufficiently
26    limited because loiterers were not subject to sanction until they disobeyed a dispersal order. *Id*. at 61. As the
     Court held, "[T]he loitering is the conduct that the ordinance is designed to prohibit. . . . [The dispersal order]
27    cannot retroactively give adequate warning of the boundary between the permissible and the impermissible
     applications of the law." *Id.* at 58-59. That the Loitering Ordinance here contains a similar dispersal
28    provision cannot save it from its plain unconstitutionality.

Cir. 1974); *Leal v. Town of Cicero*, No. 99 C 0082, 2000 WL 343232 (N.D. Ill. 2000); *NAACP Anne Arundel Cty. Branch v. City of Annapolis*, 133 F. Supp. 2d 795 (D. Md. 2001); *Commonwealth v. Asamoah*, 809 A.2d 943 (Pa. Super. Ct. 2002); *People v. Bright*, 520 N.E.2d 1355, 1359 (N.Y. 1988); *Johnson v. Athens-Clarke Cty.*, 529 S.E.2d 613 (Ga. 2000); *State v. Burnett*, 755 N.E.2d 857 (Ohio 2001). *City of Salida v. Edelstein*, Case No. 97CR62 (Colo. Dist. Ct. 1998); *State v. Richard*, 836 P.2d 622, 623-24 n.1 (Nev. 1992) (per curiam), *abrogated on other grounds by State v. Castaneda*, 245 P.3d 550 (Nev. 2010) (striking down as vague an ordinance that made it unlawful "for any person to ***loiter or prowl*** upon the private property of another ***without lawful business*** with the owner or occupant thereof" because it failed "to provide sufficient notice of when stepping onto another's property will subject an individual to arrest" (emphasis added)).

Notable among these, in *U.S. ex rel. Newsome v. Malcom*, 492 F.2d 1166, 1171 (2d Cir. 1974), the Second Circuit held unconstitutionally vague New York's loitering statute, which rendered guilty of loitering a person who:

> Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonable credible account of his conduct and purposes.

The Court held that the statute failed under both alternatives of the vagueness inquiry, but, as relevant here, its analysis regarding arbitrary enforcement focused on the statute's tension with Fourth Amendment protections against unlawful search and seizure. Specifically, the Court noted that "[t]he section permits arrests and convictions for suspicion or for possible crime based on circumstances less compelling than the reasonable and articulable factors which are required to sustain a mere on-the-scene frisk." *Id*. at 173. Accordingly, the Court was concerned that "the section could lend itself to the abuse of pretextual arrests of people who are members of unpopular groups or who are merely suspected of engaging in other crimes, without sufficient probable cause to arrest for the underlying crime." *Id.* The Court concluded that the New York loitering ordinance "contravenes the Due Process Clause of the Fourteenth Amendment not only because it fails to specify adequately the conduct it proscribes, but also because it fails to provide sufficiently clear guidance for police, prosecutors, and the courts so that they can enforce the statute in a manner that

10

1  is consistent with the Fourth Amendment." *Id* at 1174.  Thus, as *Newsome* explains, a statute is

2  unconstitutionally vague if it fails to offer the kinds of guidance and criteria that would allow police

3  to enforce it in a manner consistent with the Fourth Amendment.

4
        **2.  The Loitering Ordinance is unconstitutionally vague because it fails to**
              **provide sufficient notice of what conduct is prohibited.**
5

6        As in the numerous cases cited above, the language of the Loitering Ordinance here fails

7  under both alternatives of the vagueness analysis.  As to the notice requirement, the Loitering

8  Ordinance relies on undefined, imprecise language and thereby fails to give the ordinary citizen

9  adequate notice of what conduct is forbidden and what is permitted.

10        The language of the Loitering Ordinance is replete with ambiguity.  Like the statute in

11  *Nunez*, the Loitering Ordinance relies on imprecise terms such as "wander" or "prowl."  These terms

12  are nowhere defined, have not been interpreted by courts in California, and could be construed to

13  have several meanings, some of which are nonsensical.  *See, e.g.*, *Prowl*, Merriam-Webster,

14  https://www.merriam-webster.com/dictionary/prowl (last updated July 15, 2018) (defining

15  "prowl[ing] as "mov[ing] about or wander[ing] stealthily in or as if in search of prey").  The law

16  does define "loiter[ing]" as "to delay, to linger, or to idle about any such Housing Authority of the

17  city property without a lawful purpose for being present." It fails, however, to explain how "lawful

18  purpose" differs from "lawful business," used later in the statute.  Oakland Municipal Code Section

19  9.08.250.  Moreover, it is not clear whether "lawful business" modifies only "is present," or if it

20  instead modifies each of the verbs that precedes it.  It is likewise unclear if the "lawful business"

21  referred in the law must be "on the property of the Housing Authority" or if "on the property"

22  modifies only the preceding verbs.

23        But the most notable ambiguity in the statute is its failure to define "without lawful purpose"

24  and "without lawful business," both critical to determining how one violates the Loitering

25  Ordinance.  As to this failure, *Papachristou* and *Richard* are squarely on point. Both of those cases

26  held those exact phrases to be unconstitutionally vague because they could readily be interpreted to

27  include innocent acts. *Papachristou*, 405 U.S. at 164; *Richard*, 836 P.2d at 624.  The Loitering

28  Ordinance is no less ambiguous and fails for the same reason.

One could charitably construe the Loitering Ordinance as a proxy for "trespassing," intended to apply to anyone standing on OHA property without explicit permission to be there.  Indeed, this is the position that OHAPD has taken in the course of pre-litigation communication—that the Loitering Ordinance represents a benign substitute for a trespassing law.  *See* Compl. ¶ 72.  But even assuming that this is in fact the law's purpose, it remains entirely unclear how broadly this interpretation should extend, since the terms of the Loitering Ordinance are plainly much broader than those defining criminal trespass under California law.[3]  If someone pulls into an OHA parking lot because of car trouble and remains there for several hours while waiting for a ride home, is that a loitering violation?  What if someone makes an unannounced visit, sees that the person he or she wishes to visit is not home, and decides to wait on a bench and scroll through his or her phone?  What if someone is simply sunbathing in an OHA courtyard?

On the other hand, if "without lawful purpose" means "with an illegal purpose," the Loitering Ordinance could be construed as attempting to punish or prevent criminal acts.  Under that interpretation, the Loitering Ordinance could be enforced against anyone, invited or not, for standing in the common areas of the housing complexes with an "unlawful purpose" or with "unlawful business."  But here again, it is not clear how one should conform their "conduct" to the statute's requirements.  Is anyone who contemplates committing a crime while on OHAPD property guilty of this infraction, even if he or she later changes his or her mind?

The Loitering Ordinance fails to meet notice requirements of the Fourteenth Amendment because it fails to provide any "standard of conduct" and, conversely, fails to establish "any *core* of unquestionably prohibited activities."  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1020-21 (9th Cir. 2013) (internal citations and quotation marks omitted).

> **3.  The Loitering Ordinance is also unconstitutionally vague because it fails to provide any guidance to law enforcement as to how to enforce it, or alternatively, how to enforce it in a constitutionally permissible manner.**

The Loitering Ordinance also fails because it encourages "arbitrary and discriminatory enforcement."  In applying this test, courts invalidate as unconstitutionally vague statutes that leave too

---

[3] In California, criminal trespass requires the government to show that the defendant (1) willfully entered or remained on the property of another; (2) did so with the specific intent of interfering with the other person's property rights; and (3) actually interfered with those rights.  Cal. Penal Code § 602.

1   much to the "whim of the any police officer" who happens to see or stop any particular individual.  *See*

2   *Kolender*, 461 U.S. 352 at 358 (citation omitted). This concern is particularly salient with "vagrancy" or

3   "loitering" statutes, because "[a] vagrancy prosecution may be merely the cloak for a conviction which

4   could not be obtained on the real but undisclosed grounds for the arrest." *Papachristou*, 405 U.S. at 169.

5                   **a.   The Loitering Ordinance invites arbitrary enforcement.**

6            Exactly like the unconstitutional ordinance in *Papachristou*, the Loitering Ordinance here invites

7   arbitrary and discriminatory enforcement.  In *Papachristou*, the Court addressed a loitering statute that

8   prohibited "wandering or strolling around from place to place without any lawful purpose or object." 405

9   U.S. at 156 n.1.  The Court found that the statute effectively invited the arrest of individuals "who look

10  suspicious to the police."  *Id.* at 170.  Such a statute would sweep up "poor people, nonconformists,

11  dissenters, idlers," and require them to "comport themselves according to the life style deemed

12  appropriate by the Jacksonville police and the courts."  *Id.*  Similarly, here, the Ordinance prohibits,

13  among other things, being "present without lawful business."  This language provides "no standards

14  governing the exercise of the discretion granted by the ordinance." *Id.*  This is so for two reasons.

15           *First*, the Supreme Court has already construed the term "without lawful purpose" in the context

16  of a loitering ordinance to provide "no standards governing the exercise of the discretion granted by the

17  ordinance."  *Id.*  Put another way, different officers can (and do) interpret and apply the Loitering

18  Ordinance in different ways.  Indeed, some officers might interpret it to mean that anyone who is

19  standing on OHA property without express permission from a resident—even someone pausing on a

20  bench to rest or check their email—should be dispersed.  Another officer might apply it to mean that

21  even those guests with permission to be on OHA property are subject to enforcement if they linger

22  too long or appear to be engaged in "undesired" activity during their visit.  As in *Papachristou,* the

23  Loitering Ordinance gives law enforcement license to cite individuals they deem "suspicious," an

24  invitation that does not "pass constitutional muster."  *Id.* at 169.

25           *Second*, the Loitering Ordinance contains no objective, outward criteria or indicia to guide

26  law enforcement in determining whether someone has or might have violated the ordinance.  For

27  example, the Ordinance prohibits loitering, which is defined as "to delay, to linger, or to idle [on

28  OHA property] without a lawful purpose for being present."  Even assuming the term "lawful

                                                    13

1   purpose" were clear, which it is not, two individuals could engage in the same outwardly identical

2   conduct (delaying or lingering).  One of them might violate the ordinance (because she internally

3   lacked a "lawful purpose") while the other would be in compliance.  OHAPD would have no way of

4   objectively distinguishing these two individuals, short of "requir[ing] [them] to answer a series of

5   questions" concerning their respective purpose.  *Kolender*, 461 U.S. at 360.  By failing to provide

6   any objective guidance as to factors that might lead to a stop or arrest, the Ordinance impermissibly

7   grants OHAPD "full discretion" to determine whether an individual has complied with the law and

8   unconstitutionally "entrust[s] lawmaking to the moment-to-moment judgment of the policeman on

9   his beat."  *Id.* (internal quotation marks omitted; alteration in original).  The Ordinance, therefore,

10  "enable[s] men to be caught who are vaguely undesirable to the police." *Papachristou*, 405 U.S. at

11  165-66.

12
### b.  The Loitering Ordinance invites the police to violate the Fourth Amendment.

13         The Defendants may respond that, to prevent arbitrary and discriminatory enforcement, they

14  have recently issued guidance that would create uniformity in how the Loitering Ordinance is

15  enforced.  Specifically, in Special Order 18-4, issued on June 8, 2018, OHAPD officers have been

16  instructed essentially to stop individuals—any individuals—who are on OHAPD property to ask

17  them a series of questions regarding their purpose.  *See* Compl. 72.  Special Order 18-4 contains no

18  instructions, however, as to what an individual must be doing to invite or trigger this police contact

19  and questioning or, conversely, what a person can do to avoid it.

20         OHAPD recent "guidance," therefore, only further lays bare the Ordinance's irreconcilability

21  with the Constitution.  Exactly as in *Newsome*, discussed *supra*, the Loitering Ordinance here fails to

22  provide law enforcement with the objective criteria or guidance it needs to enforce the ordinance in

23  conformity with the Fourth Amendment.  Because the Loitering Ordinance relies on vague terms

24  such as "lawful business" and "lawful purpose"—which will almost never be readily observable by

25  the police—any violation (even if that violation was clearly defined) cannot be truly ascertained or

26  even assessed until after the OHAPD seizes an individual and subjects him to questioning regarding

27  his purpose or business.  The statute therefore invites citizens to be routinely seized and subjected to

28  police contacts based on nothing more than mere presence. And just as in *Newsome*, the Loitering

14

1    Ordinance allows the police to make an end-run around the Fourth Amendment by providing a

2    pretext for questioning people and gathering information about other crimes for which they do not

3    have the requisite reasonable suspicion. 492 F.2d at 1173.

4           Accordingly, OHAPD has now openly declared its authority to seize any individual under the

5    guise of investigating a "loitering" violation, even absent any indicia of wrongdoing and certainly

6    "based on circumstances less compelling than the reasonable and articulable factors" required by the

7    Fourth Amendment. *Newsome*, 492 F.2d at 1173; *see also Terry v. Ohio*, 392 U.S. 1 (1968)..

8    Indeed, in its own Incident Reports, OHAPD uses the term "detain" to describe its actions vis-à-vis

9    the people it has stopped and questioned for possible "loitering."  Compl. ¶ 36.  Evidently, then, both

10   OHAPD's official and its de facto policies with respect to the Ordinance call for routine seizures of

11   individuals on OHA property in violation of the Constitution.

12                   **4.   As further evidence of its vagueness, OHAPD is, in fact, enforcing the
                             Loitering Ordinance in an arbitrary manner.**

13

14          Finally, as further proof of its vagueness, it is clear that the Loitering Ordinance is in act

15   readily and arbitrary used against OHA residents and their guests.  OHAPD regularly accuses

16   individuals—even those affiliated with residents—of "loitering" for simply waiting in the parking

17   lots or standing in the outdoor spaces of the housing complexes either before or after visiting a

18   resident.  Compl. ¶ 31.  OHAPD further faults residents, such as Mathieu, for "loitering" with other

19   people and for failing to prevent their guests from "loitering," either before or after they have left an

20   individual residence.  Compl. ¶¶ 48-50.   Even as to those individuals who are not residents or

21   guests, the Loitering Ordinance is often used to police conduct that is entirely innocent and poses no

22   threat.  Compl. ¶33.  For all the reasons noted above, this irregularity in enforcement is not

23   surprising—the language of the Ordinance invites such arbitrary enforcement because its terms and

24   scope are unclear.

25          For all of these reasons, Plaintiffs are highly likely to succeed on the merits of their claim

26   that the Loitering Ordinance is unconstitutionally vague.  The language of the Loitering Ordinance

27   fails under either alternative of the vagueness analysis, and it must, therefore, be enjoined.

28

**B.  An injunction is necessary to prevent irreparable harm.**

Plaintiffs easily meet the remaining prongs of the preliminary injunction analysis.  Because of the constitutional rights at issue, Mathieu and Jackson clearly stand to be irreparably injured if the Loitering Ordinance continues to be enforced.

*First*, being subject to any unconstitutional state action, such as the unduly vague Loitering Ordinance, constitutes irreparable injury.  *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) ("[A]n alleged constitutional infringement will often alone constitute irreparable harm."); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) (holding that the Plaintiff was likely to succeed on vagueness challenge and had fulfilled all of the "non-merits factors" of the preliminary injunction analysis).

*Second*, as noted above, OHAPD's enforcement of the Loitering Ordinance subjects the Plaintiffs to repeated unconstitutional seizures, which have specifically been recognized as an irreparable harm. *See Mid-Fla Coin Exch., Inc. v. Griffin*, 529 F. Supp. 1006, 1030 (M.D. Fla. 1981) (noting that "enforcement of the statutes against plaintiffs would operate to deprive them of their constitutionally protected right to be free from unreasonable searches and seizures, as well as their right to due process under the Fourteenth Amendment. This alone is sufficient to meet the required showing of irreparable harm." (citing cases)).

*Third*, as long as the Loitering Ordinance continues to be enforced, Mathieu and Jackson are forced to act in a manner that avoids further loitering accusations—thereby depriving them of the ability to live freely and engage in perfectly lawful behavior.  *See Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (noting that "[u]ncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'").  Jackson avoids coming to the Lockwood even though his family and friends still live there.  Jackson Decl. ¶ 11.  Mathieu avoids spending too much time outside of his apartment, even though he is a resident of Lockwood and should be able to be present in its outdoor spaces.  Mathieu Decl. ¶ 15.  Instead, he is a prisoner in his own home.  *Id*.  Being forced to try to avoid "the unlawful zone," creates irreparable harm to the Plaintiffs as long as the Loitering Ordinance is enforced.

Finally, each day that the Loitering Ordinance exists, Mathieu and his mother's tenancy in subsidized housing is in jeopardy. The Ordinance's vagueness has led directly to the generation and accumulation of Incident Reports that become part of Mathieu's tenant file. As long as the Loitering Ordinance remains in force, Mathieu suffers stress on a daily basis. Mathieu Decl. ¶¶ 16-19. Particularly given the frequency with which Mathieu is reported, allowing the Loitering Ordinance to continue to be enforced could threaten or put in jeopardy Mathieu's and his mother's ability to maintain their home.

### C. The balance of hardships tips in Plaintiffs' favor.

As illustrated by the issues raised above, the balance of equities tips sharply in favor of granting relief. Granting the preliminary injunction will spare the Plaintiff from suffering a number of irreparable injuries, described above. Conversely, this injunction will impose no special burden on the Defendants. Defendants will merely cease enforcing the Loitering Ordinance, the purpose and parameters of which are unclear, but can continue using other, constitutionally permissible methods of performing their public duties and policing criminal behavior. *Diggs v. Hous. Auth.*, 67 F. Supp. 2d 522, 533-34 (D. Md. 1999) (holding that an injunction on a public housing trespass policy would not cause city defendants "a significant likelihood of harm" because it was "only one aspect of ongoing community policing efforts").

### D. The public interest favors the requested relief.

All residents of the City of Oakland have an interest in ensuring that the laws and ordinances that govern their conduct and define criminal activity are clear. *See Rodriguez v. City of Los Angeles*, CV 11-01135 DMG (JEMx), 2013 WL 12129651, at *6 (C.D. Cal. Mar. 6, 2013) (noting that the public has an interest in having law enforcement abide by the Constitution). All residents of the City of Oakland have an interest in preventing arbitrary enforcement of the law. *Id.* Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002), *overruled on other grounds by Winter*, 555 U.S. at 22 (internal quotation marks and citation omitted); *see also Buquer v. City of Indianapolis*, 797 F. Supp. 2d 905, 925 (S.D. Ind. 2011) ("'the public has a strong interest in the vindication of an individual's constitutional rights . . . .'" (quoting *O'Brien v. Town of Caledonia*, 748 F.2d 403, 408 (7th Cir. 1984)). As described above, the Loitering Ordinance violates the Due Process Clause of the Fourteenth Amendment by failing to provide the public with adequate notice of what "core" conduct is prohibited. For these reasons, the

17

1    public interest weighs strongly in favor of a preliminary injunction.

2    **V.       CONCLUSION[4]**

3           For the foregoing reasons, the Court should grant the Plaintiffs' motion for a preliminary

4    injunction and enjoin the Defendants from enforcing Oakland Municipal Code Section 9.08.250,

5    which is vague on its face and violates due process under the Fourteenth Amendment of the United

6    States Constitution.

7    DATED:  September 26, 2018

8

9                                              By: /s/ Shilpi Agarwal
                                                    SHILPI AGARWAL
10                                                  ACLU Foundation of Northern California

11                                                  Attorneys for Plaintiffs Darren Mathieu II and
12                                                  Edward Jackson Jr.

13

14

15

16

17

18

19

20

21

22

23

24   [4] No bond is necessary in this case for three separate and independent reasons. First,
     Plaintiffs have a strong likelihood of success on the merits.  *See Scherr v. Volpe,* 466 F.2d
25   1027, 1035 (7th Cir. 1972). Second, there is no realistic likelihood of harm to Defendants
     resulting from issuance of the requested injunction.  *See Jorgensen v. Cassiday*, 320 F.3d 906, 919
26   (9th Cir. 1997).  Third, the "equities of potential hardships to the parties" weighs in favor
27   of Plaintiffs.  *Temple Univ. v. White,* 941 F.2d 201, 220 (3d Cir. 1991).  Finally, because
     the preliminary injunction merely requires the Defendants to refrain from enforcing the Loitering
28   Ordinance, a bond is conceptually inapplicable since there is no risk of monetary loss.